■ In the Matter of ALFRED EDDY et al., Respondents, v JAMES NIEFER et al., Constituting the Town of Ithaca Zoning Board of Appeals, Appellants. [745 NYS2d 631] —Mercure, J.

Petitioners are the owners of a 93-acre parcel of real property in the Town of Ithaca, Tompkins County. Substantially all of petitioners' property is devoted to agriculture, but petitioners wish to operate a sand and gravel mine on 4.8 acres of the property and thereafter reclaim that land for agricultural purposes as well. Pursuant to the Town Zoning Ordinance, mining operations are permitted in the town upon the issuance of a special use permit by the Town Zoning Board of Appeals (hereinafter ZBA) following a review and recommendation by the town engineer; in addition, when the proposal involves the extraction of more than 2,500 cubic yards of material, as it did in this case, the matter must first be referred to the Town's

Planning Board for its recommendation (Town Zoning Ordinance § 70 [5]). Pursuant to Town Zoning Ordinance § 70 (3), "[i]n considering the proposed use the [ZBA] shall take into account the distance of the operation from neighboring property and public ways, the possible detriment of such use to the future development of the land in question, and significant nuisance or detriment of the operation to neighboring landowners and to the community as a whole." In addition, Town Zoning Ordinance § 77 (7) sets forth criteria for the issuance of special use permits generally, including the promotion of the health, safety, morals and general welfare of the community, reasonable adaptation of the premises to the proposed use, that the proposed use fill a neighborhood or community need, that the proposed use not devalue neighboring property or seriously inconvenience neighboring inhabitants, and that proposed access and egress for all uses be safely designed.

Petitioners filed their application, which included a town development review application, a Department of Environmental Conservation mining permit application, a State Environmental Quality Review Act full environmental assessment form, a short environmental assessment form (hereinafter EAF), with part one completed, the town excavation or fill permit application, mining plan and base map, reclamation plan, and a letter from Brayton Foster, a consulting geologist. The application was first reviewed by Susan Ritter, an environmental planner for the Town, who also prepared part two of the EAF and reached the conclusion that the proposed action will not result in any significant adverse environmental impacts. The application was then reviewed by the Town Engineer, who concluded that the plan would "adequately protect[ ] the property and surrounding properties from any significant adverse consequences" of the mining operations. The Planning Board then conducted a public hearing and thereafter recommended approval of the application subject to certain conditions that are not at issue here.

The matter then went before the ZBA, which conducted two sparsely attended public hearings and then voted on the application, subject to certain restrictions agreed to by petitioners, including, among others, that mining operations would be limited to the hours of 8:00 A.M. to 5:00 P.M. on weekdays from April 1 through October 31 of each year, the sand and gravel removed from the site would be limited to 32 truckloads per day or four truckloads per hour, the permit was to expire at the conclusion of three years from the date of its issuance, the maximum sand and gravel to be removed would not exceed

90,000 cubic yards, and there would be no on-site processing other than the screening of oversized objects. Ultimately, the ZBA voted three to two to disapprove the application based on its conclusions that "the project would produce an additional amount [of] noise and traffic on Hector Street and the neighboring properties * * * there will be limited on-site supervision * * * the noise and other activities will be detrimental to the neighborhood * * * and the addition of traffic on Hector Street creates a great safety concern."

Petitioners then challenged the ZBA's determination in this CPLR article 78 proceeding. Concluding that the determination was not supported by substantial evidence, Supreme Court granted the petition, annulled the determination and granted the special use permit sought by petitioners. Respondents appeal.

Fundamentally, zones qualifying for special exception permits, such as the one at issue here, "represent a threshold legislative acceptance that the specified use accords with the general municipal zoning plan * * * [and] a special exception permit is available upon a showing of compliance with legislatively imposed conditions pertaining to the intended use" (*Matter of Wegmans Enters. v Lansing*, 72 NY2d 1000, 1001 [citations omitted]; *see, Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston*, 30 NY2d 238, 243-244). Therefore, although a zoning board "still retains some discretion to evaluate each application for a special use permit, to determine whether applicable criteria have been met and to make commonsense judgments in deciding whether a particular application should be granted, such determination must be supported by substantial evidence" (*Matter of Twin County Recycling Corp. v Yevoli*, 90 NY2d 1000, 1002). Further, although scientific or expert testimony will not be required in every case, "the board may not base its decision on generalized community objections" (*id.* at 1002).

Based on our review of the record, we conclude that petitioners made an overwhelming showing that the applicable statutory criteria had been satisfied and that the ZBA's contrary determination was based on nothing more than several offhand comments made by a few of the citizens who attended the public hearings and, to an even greater extent, frequently expressed conclusions by the ZBA Chair concerning his opposition to the project and the noise and traffic that he believed it would generate, none of which constituted competent evidence supporting the ZBA's determination (*see, Matter of Twin County Recycling Corp. v Yevoli, supra* at 1002; *Matter of C &*

*A Carbone v Holbrook*, 188 AD2d 599, 600; *cf., Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead*, 98 NY2d 190, 196). On the issue of traffic, which formed a significant basis for the ZBA's adverse determination, the question came down to one of whether a maximum of four dump trucks per hour during regular business hours would unduly burden Hector Street, a state highway with a current vehicle load of over 3,700 vehicles per day. Notwithstanding Ritter's expert opinion that "even if [petitioners] were able to remove all of the gravel within a one year period of time, calculations show that it should not lead to a significant generation of traffic" and the ZBA's own negative declaration of environmental significance, the ZBA apparently chose to ground its decision on the few citizen "concerns" expressed at the public hearings. Similarly, the primary "evidence" concerning excessive vehicle noise was the speculation of the ZBA Chair that "it is reasonable to assume that a Jake brake is going to be used on [dump trucks leaving the mine]" and "[i]f he were living in a house on Hector Street and on average had to listen to a Jake brake every 15 minutes, he would be concerned." Finally, the ZBA's implicit conclusion that the operation required continuous on-site supervision has no support in the statutory requirements or hearing evidence.

Under the circumstances, we conclude that Supreme Court did not err in its determination and its judgment shall therefore be affirmed (*see, Matter of Twin County Recycling Corp. v Yevoli, supra* at 1002).

Cardona, P.J., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.